PEOPLE v. GARRETT.

INTOXICATING LIQUORS — ILLEGAL POSSESSION — SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY.

Officers arresting defendants for intoxication on a public street, who, through the window of defendants' sedan saw two bottles of intoxicating liquors therein, were justified in opening the car with the key found in their possession after their arrest, and the liquor so obtained was admissible in evidence against them in a prosecution for illegal possession, although seized without a search warrant.[1]  BIRD and WIEST, JJ., dissenting.

Exceptions before judgment from Ottawa; Cross (Orien S.), J.    Submitted June 12, 1925.    (Docket No. 106.)    Decided October 1, 1925.

Ben Garrett and Roger Northoek were convicted of violating the liquor law.    Affirmed.

*John J. Smolenski,* for appellants.

*Andrew B. Dougherty,* Attorney General, and *Fred T. Miles,* Prosecuting Attorney, for the people.

---

[1] Criminal Law, 16 C. J. § 1229; Intoxicating Liquors, 33 C. J. § 376 (Anno).

On necessity of search warrant for search for or seizure of intoxicating liquors, see notes in 3 A. L. R. 1516; 13 A. L. R. 1316; 27 A. L. R. 711.

BIRD, J. (*dissenting*).  Defendants were convicted in the county of Ottawa of having possession of intoxicating liquor.   The defendants are two Grand Rapids boys who went to Holland in a closed automobile to see a football game.   When they arrived at Holland they were partially intoxicated.   They drove their car to a private parking place and left it there.   A short time thereafter they ran across a policeman.   He had some conversation with them and they were saucy and wanted to fight and he arrested them for being intoxicated, and they were taken to the city lockup.   Here they were searched.   Among the effects of one of them was a key to the sedan.   The officer took the key and went several blocks distant to the parking place of the car, unlocked it and searched it.   He found a very small quantity of intoxicating liquor.   Defendants moved the court for an order to suppress any evidence found in searching the car, on the ground that the officer had no search warrant. This motion was overruled.   The defendants insist that the search was an unreasonable one within the meaning of section 10, article 2, of the Constitution of Michigan.   When the boys were arrested the officers had a right to search them and they had a right to take from them dangerous weapons or anything else that they reasonably might deem necessary to their own protection or to the public safety, or for the safekeeping of the prisoner.   2 R. C. L. p. 468.   If we concede that the officers had the right to take the key away from the defendants as they did, they had the right to do nothing more than keep it for them and return it to them after the case was over.   They had no more right to go several blocks distant to a private parking ground and search the car than they would have had to search his home if it had been a key to his dwelling house.   Suppose the key had been one to his lock box in the bank, would

the officers have had the right to go and search the lock box without a warrant? But the officer says: "I saw the bottle through the window." That is what happened in *Adkins* v. *Commonwealth*, 202 Ky. 86 (259 S. W. 32), and the court held the officer should have had a search warrant. The officer had no probable cause for searching the automobile. They do not claim that any one told them that the boys had liquor in the car, they do not even claim that they had a suspicion that there was any liquor in the car. If there was probable cause they should have procured a search warrant and searched it in the regular way. Had the officers gone to a justice of the peace and told him all they knew, it is extremely doubtful whether he would have regarded it as a case for the issuance of a search warrant.

We think the trial court was in error in not granting the motion to suppress the evidence. Had he done so there could have been no conviction. The judgment of conviction should be reversed and the prisoners discharged.

WIEST, J., concurred with BIRD, J.

SHARPE, J. In my opinion, the evidence of the officers justified the securing of the liquor without a search warrant. Officer O'Connor testified:

"My attention was called to these gentlemen that afternoon about 3 o'clock. They were staggering around. They were intoxicated. We went up to them and asked them what they were doing. They said none of your business. I asked them if they had an automobile there and they said yes. I asked them where it was and they went direct to their car. It was a Franklin sedan. We looked in the car and through the window we could see a bottle in the door of the car and also one bottle sitting on the floor of the car. I asked who it belonged to and they wouldn't tell me. Mr. Garrett told me to go away from that car or he would knock my block off. I told him he

better change his mind, wouldn't look well right there in public. He said it didn't make any difference where he was, he was Soldier King's sparring partner and could lick any man in Holland. Soldier King is a pugilist in Grand Rapids. He said he sparred every afternoon in Grand Rapids with Soldier King and was to spar with him that afternoon but instead of that he came to Holland. Garrett told me he would lick me on the ground I was standing on, struck at me, knocked my hat off, struck at me several times and it was up to me to defend myself then and I hit him. I placed him under arrest, took him down and locked him up. Afterwards we went back from the jail and searched the car, after we got the key. In the car we found a bottle of wine and a bottle of moonshine whisky. Those are both intoxicating liquors. We took the liquors to police headquarters at Holland. Complaint was made against these two young men for possession of this liquor. I had a talk with them as to whose liquor it was and Mr. Garrett said he owned the moonshine whisky and Mr. Northoek said he owned the wine."

Officer Steketee testified to the same effect.

The condition of the young men fairly indicated the contents of the bottles. Under our holding in *People* v. *Kamhout,* 227 Mich. 172; *People* v. *Krahn,* 230 Mich. 528, and the recent decision of the Supreme Court of the United States in *Carroll* v. *United States,* 267 U. S. 132 (45 Sup. Ct. 280), decided March 2, 1925, the seizure was fully justified.

The danger of permitting young men to drive automobiles when intoxicated, or to carry intoxicating liquors with them in their automobiles, is so well known that the officers should be commended for their prompt action on this occasion.

The exceptions are overruled, and the trial court advised to proceed to sentence.

MCDONALD, C. J., and CLARK, MOORE, STEERE, and FELLOWS, JJ., concurred with SHARPE, J.